## STATE OF CONNECTICUT *v.* ANDREW D'AMBROSIA
## (12514)

HEALEY, PARSKEY, SHEA, DANNEHY and HAMMER, Js.

Argued January 18—decision released March 12, 1985

*Louis I. Parley,* for the appellant (defendant).

*Julia D. Dewey,* assistant state's attorney, with whom, on the brief, were *Arnold Markle,* state's attorney, and *Arthur Hadden,* assistant state's attorney, for the appellee (state).

DANNEHY, J. The defendant appeals from a revocation of his probation and the imposition of an effective sentence of not less than five nor more than ten years in the custody of the commissioner of correction. The defendant's lone contention on appeal is that he had been prejudiced by the state's failure to return him from incarceration at a federal correctional institution in Pennsylvania for a prompt hearing on the information seeking to revoke his probation.[1]

---

[1] No claim is made that the defendant was denied his right to due process or a speedy hearing due to any delay once Connecticut authorities began the extradition process. His claim involves only that time period between May, 1981, and October, 1982.

The events leading up to the revocation of probation and the imposition of sentence, which can be gleaned from a rather disjointed record and undisputed recitals appearing in the briefs of the parties, may be set forth in chronological order. On March 31, 1981, the defendant pleaded guilty to a mixed bag of charges of attempted robbery in the third degree; conspiracy to commit burglary in the third degree; escape in the first degree; and failure to appear in the first degree; and was sentenced to probation. It was a special condition of his probation that the defendant report to the state hospital in Middletown for psychiatric evaluation and treatment for drug dependency. The defendant entered the hospital on April 1, 1981, and left without permission on April 5, 1981. He was permanently discharged in an "Absent Without Official Leave" (AWOL) status on April 10, 1981.

The defendant's probation officer discovered on April 8, 1981, that the defendant was AWOL. Unsuccessful efforts were made to find him. On April 20, 1981, the defendant's lawyer told the probation officer that the defendant had left Connecticut. On April 28, 1981, the probation officer filed a request with a supporting affidavit for the defendant's arrest.

On May 5, 1981, the probation officer was informed by the defendant's lawyer that the defendant had been arrested in Ohio for state crimes and was also wanted in connection with unrelated federal offenses. Later the probation officer learned that the defendant was charged, in June, 1981, with threatening the life of the President of the United States and, further, that after a plea of guilty to other pending federal charges, the defendant was sentenced to imprisonment for two years in January, 1982.

Nothing more was heard about the defendant until October 28, 1982, when the defendant wrote to the pro-

bation department seeking clarification of any charges pending against him in Connecticut. Immediately on learning his whereabouts, the state commenced extradition proceedings. When the defendant indicated his resolve to fight extradition, a detainer was lodged on December 1, 1982.

The defendant appeared in the Superior Court on February 8, 1983, at which time he denied the charge that he had violated the conditions of his probation. Following various continuances and motions which are of no moment here, a hearing on the violation charges commenced on June 23, 1983; and the violation was established on the same day. The judge revoked the sentence of probation and required the defendant to serve the indeterminate sentence that had been imposed on March 31, 1981. See General Statutes § 53a-32.

At the revocation hearing the defendant was represented by counsel, cross-examined witnesses and presented evidence in his own behalf. It has long been established that the trial court must determine the credibility of witnesses and the weight to be given their testimony. See, e.g., *Damora* v. *Christ-Janer,* 184 Conn. 109, 112–13, 441 A.2d 61 (1981). We will not disturb a finding of revocation of probation merely because of conflicting testimony.

Through the whole hearing the defendant claimed prejudice as a result of improper delay by Connecticut authorities in disposing of the probation violation charges against him. In particular, he claimed that he lost an opportunity to receive concurrent state and federal sentences. But this is speculation. The judge made the following unchallenged findings: "The Court finds no waiver of the State's right to prosecute, no denial of the defendant's speedy trial rights, and no denial of procedural and due process. Important to a showing of a denial of due process is a showing of actual

significant prejudice. The Court is satisfied that the defendant has shown absolutely no prejudice to him as a result of the actions of the State of Connecticut. There is no evidence that the State intentionally failed to file a detainer against the defendant in order to prejudice him or to gain any advantage to the State.

"There is no prejudice to the defendant in his ability to present a defense to this violation proceeding. His violation of his probation that was imposed in 1981 has not expired, so that the issuance of a warrant has not resulted in a continuation of probation that otherwise would have expired.

"There is no evidence that any evidence or witnesses that the defendant wished to present before the Court in defense of this violation proceeding was unavailable or could not be presented because of any delay. Speculation that the defendant indulges in that he might have obtained on the violation of probation a sentence concurrent with his federal sentence is just that—speculation. There is no evidence at all that the federal authorities would have declined to prosecute the defendant if Connecticut had filed a detainer against him. It appears the federal authorities knew, in fact, immediately that a warrant was outstanding against the defendant in Connecticut for this probation violation but they nevertheless did prosecute and sentence him for a federal offense."

The trial court concluded that the legitimate exercise of judicial discretion may have determined the defendant's sentences as much as the filing of a detainer.

The judge was entitled to draw reasonable inferences from the evidence and reach appropriate conclusions. It is presumed that he did. At any rate, the defendant does not appear to have found any fault with them. In

such circumstances, we cannot say that the conclusions reached were clearly erroneous and, therefore, dismissal is unwarranted. Practice Book § 3060D.

On this record, the trial judge was justified in finding that the defendant was not prejudiced by delay. Instead, the evidence suggests that once the state was in possession of knowledge of his whereabouts, it moved expeditiously. The finding that the defendant violated his probation is unchallenged.

There is no error.

In this opinion the other judges concurred.