LARRY MANZIN *v.* UNITED BANK AND TRUST COMPANY, EXECUTOR (ESTATE OF HANNAH M. LIDINGTON), ET AL. (3704)

HULL, BORDEN and DALY, Js.

Argued December 13, 1985—decision released March 18, 1986

*John A. Barbieri,* for the appellant (plaintiff).

*Walter C. Nicksa, Jr.,* for the appellee (named defendant).

DALY, J. The plaintiff commenced this action to recover a real estate brokerage commission from the defendants,[1] stemming from the sale of land in New Hartford. From the judgment rendered in favor of the

[1] Hannah M. Lidington is deceased and United Bank and Trust Company has qualified as the executor of her estate.

named defendant, United Bank and Trust Company, the plaintiff has appealed.[2]

The matter was submitted to the trial court on an agreed statement of facts which indicated that the plaintiff, Larry Manzin, a licensed realtor in Connecticut, would be entitled to a real estate commission of 10 percent if he succeeded in procuring a buyer, ready, willing and able to purchase the premises owned by the decedent, Hannah Lidington, for whom the defendant, United Bank and Trust Company, is acting as executor. The plaintiff procured a buyer and the property was sold by Lidington for $185,000, $15,000 in a cash down payment and the balance in a note secured by a mortgage on the property. At the closing, Lidington was unable to pay the plaintiff his 10 percent commission ($18,500) out of the buyer's $15,000 cash down payment. From the $15,000 cash payment, Lidington had to pay Dwight Murphy, a party to the real estate contract, the sum of $11,000 for his one-half interest in approximately twenty-two acres of the land being sold, which left her only $4000 to pay the plaintiff's commission and the closing costs.

Because of these payment arrangements, the plaintiff agreed to accept as payment of his commission a portion of each payment made on the mortgage note. The parties' statement of facts submitted to the trial court provided in relevant part: "At the time of the closing, the plaintiff agreed to accept payment of his commission or service fee due him as follows: $1,500 at the time of transfer of title, $1,500 when the purchaser paid the decedent the first payment of principal due on the purchase money note, and thereafter 10% of each principal payment paid by the purchaser on account of said purchase money mortgage."

---

[2] The defendant Dwight Murphy was a party with Hannah Lidington to the real estate contract. He received full compensation for his interest in the property sale in question and is not involved in this appeal.

Lidington paid the plaintiff $6500 of the $18,500 commission. After making the first principal payment on the mortgage, the purchaser paid an additional $7798 on account of the principal due, and thereafter defaulted, resulting in the foreclosure of the mortgage. The plaintiff sued Lidington's executor for the remaining commission balance of $12,000. The trial court found that the agreement provided that 10 percent of any payments made by the purchaser was to be paid to the plaintiff. Because no further payments, beyond the $7798, were paid by the purchaser to the executor bank, the trial court determined that there was nothing due and owing from the bank and therefore rendered judgment in its favor.

The plaintiff has appealed claiming the trial court erred in construing the subsequent agreement of the parties concerning the payment of the plaintiff's commission.

"On appeal, it is the function of this court to determine whether the decision of the trial court is clearly erroneous. . . . This involves a two part function: where the legal conclusions of the court are challenged, we must determine whether they are legally and logically correct and whether they find support in the facts set out in the memorandum of decision; where the factual basis of the court's decision is challenged we must determine whether the facts set out in the memorandum of decision are supported by the evidence or whether, in light of the evidence and the pleadings in the whole record, those facts are clearly erroneous. That is the standard and scope of this court's judicial review of decisions of the trial court. Beyond that, we will not go." *Pandolphe's Auto Parts, Inc.* v. *Manchester,* 181 Conn. 217, 221–22, 435 A.2d 24 (1980); *Robert S. Weiss & Co.* v. *Mullins,* 196 Conn. 614, 618, 495 A.2d 1006 (1985). "Unless there was an error of law or a legal or logical inconsistency with the facts

found, the conclusion of the trial court must stand. *Johnson* v. *Fuller,* 190 Conn. 552, 556, 461 A.2d 988 (1983)." *Equico Lessors, Inc.* v. *Rockville Reminder, Inc.,* 4 Conn. App. 102, 106, 492 A.2d 528 (1985).

The plaintiff contends that the modified agreement is not a valid contract and lacks consideration principally because his right to a commission is governed by the original listing agreement. "Whether a contract exists is a question of fact for the court to determine." *Randolph Construction Co.* v. *Kings East Corporation,* 165 Conn. 269, 277, 334 A.2d 464 (1973); *Finley* v. *Aetna Life & Casualty Co.,* 5 Conn. App. 394, 408, 499 A.2d 64, cert. granted, 198 Conn. 802, 501 A.2d 1213 (1985). Parties may alter any term of an existing contract by entering into a subsequent contract. Mutual promises qualify as sufficient consideration for a binding contract. *Gordon* v. *Indusco Management Corporation,* 164 Conn. 262, 267–68, 320 A.2d 811 (1973); *Taft Realty Corporation* v. *Yorkhaven Enterprises, Inc.,* 146 Conn. 338, 342, 150 A.2d 597 (1959). "For a valid modification, there must be mutual assent to the meaning and conditions of the modification and the parties 'must assent to the same thing in the same sense . . . if they are to vary the contract in any way.' " *Lar-Rob Bus Corporation* v. *Fairfield,* 170 Conn. 397, 402, 365 A.2d 1086 (1976). "The meaning to be given subsequent agreements, therefore, depends on the intention of the parties. As intention is an inference of fact, 'the conclusion is not reviewable unless it was one which the trier could not reasonably make.' " (Citations omitted.) Id., 402–403. The trial court's finding here that the plaintiff had agreed to the modification of the brokerage agreement was not clearly erroneous.

The trial court could reasonably infer that no transfer would have been consummated had the commission arrangement not taken into consideration the small

down payment and the large mortgage note and deed involved. In the case of an ordinary, unconditional brokerage arrangement, a commission is due when the broker produces a buyer who is ready, willing and able. Where the broker's right to a commission is "expressly made dependent upon the occurrence of a specific condition," as is the case here, however, then this reasoning would not control. *Nugent* v. *DelVecchio,* 36 Conn. Sup. 532, 537, 415 A.2d 1339 (1980); see *Walsh* v. *Turlick,* 164 Conn. 75, 80, 83, 316 A.2d 759 (1972). The payment of a commission may depend upon a condition beyond that implied by the ordinary broker's contract, for example, the payment of purchase price installments toward the commission. In this circumstance, the refusal or failure of the buyer to perform is fatal to the broker's recovery of the commission. See *Ferrara* v. *Firsching,* 91 Nev. 254, 533 P.2d 1351, 1352 (1975).

With respect to the plaintiff's claim of unjust enrichment accruing to the decedent's estate by virtue of its foreclosing the mortgage deed and note, a similar claim was rejected in *Craig* v. *Margrave,* 84 Nev. 638, 446 P.2d 653, 654 (1968). We reject it here as well.

The burden rests upon an appellant to show that there was error in the judgment from which the appeal was taken. Holden & Daly, Connecticut Evidence, § 60i. The plaintiff has not satisfied his burden.

There is no error.

In this opinion the other judges concurred.