[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON MOTION TO OPEN JUDGMENT
In this dissolution of marriage action filed by the plaintiff husband a decree of dissolution was entered on July 11, 1990. By motion filed August 23, 1991 defendant wife has moved to open the judgment claiming that it was procurred by fraud and lacked actual consent. The allegations of the motion having not been proven the motion is denied.
The facts underlying this motion show that the parties were married on August 19, 1978. It was plaintiff's first marriage and defendant's second marriage. There were no children born to the marriage but defendant had a daughter by her previous marriage who lived with the parties.
Throughout the marriage defendant worked at CT Page 2082 office/secretarial positions and helped support the family.
Plaintiff was a representative of a building supply company and a building contractor. The contracting business, which started as a partnership with another person, developed into a one person operation with plaintiff hiring subcontractors and casual workers as required. The income of the business fluctuated. The Federal Tax return indicates a net income of $31,122 for 1988, $78,121 from 1989 and $23,420 for 1990.
Although defendant did not work in the business she was involved and assisted plaintiff financially. For example, she was financially responsible for the purchases of some building materials and she financed a pick up truck through her credit union. Defendant also did some office work for the business.
At the time of the dissolution plaintiff's financial affidavit did not list the business as an asset with value. Accounts receivable and depreciated business tools were valued at $60,000 however.
Plaintiff held title to real property valued by him at $289,000 at the time of dissolution. This property had been in plaintiff's family and was quit claimed to him, without consideration on October 16, 1980. The parties made improvements to the property during the period of the marriage.
Problems developed in the marriage. On a number of occasions plaintiff acted with violence toward his wife. He threatened and struck both her and her daughter. At times the police were called.
In November 1989 plaintiff moved out of the family residence. He retained the services of Attorney Barbara Quinn who, at his request, initiated the dissolution action.
Defendant elected to be unrepresented in the dissolution action. She claimed that she was in fear of the plaintiff and she felt that if she did not retain an attorney it might keep plaintiff's violence under control.
The parties did meet by themselves to work out a distribution of assets. Plaintiff reported the agreement to Attorney Quinn who drafted a separation agreement and advised plaintiff as to its legal ramifications.
Susequently, defendant came to Attorney Quinn's CT Page 2083 office reviewed the agreement and signed it. Plaintiff was not present when his wife signed. He signed separately.
The agreement contained the following provision:
 The Plaintiff shall pay to the Defendant, as periodic alimony the sum of One Thousand Five Hundred (1,500.00) Dollars per month until the first to occur of the following events: (a) the death of either party; (b) five years from the date of the parties' separation agreement or June 11, 1995. Periodic alimony shall be non-modifiable as to term except as set forth above and includable in the income of the Defendant for Federal income tax purposes.
Defendant testified that plaintiff represented to her that the above provision was in effect a property settlement by which she would receive the sum of $90,000 over a five year period. She testified that plaintiff represented to her that the amount agreed upon would remain absolute and non-modifiable.
Although the payments were labeled alimony and she agreed to absorb the tax consequences, defendant claims that she considered it more of a property settlement since remarrying would not be grounds for termination.
Defendant states that she did not press her claims for an equitable share of the material assets such as the realty and the business because of her reliance on plaintiff's statement concerning the above provision.
Plaintiff testified that in his discussion with defendant concerning a settlement of the dissolution action his wife expressed concern for the future and that she needed money. He then commenced paying her $1,500 each month. He stated that they agreed that he would pay alimony of $1,500 per month for five years. He denied ever stating that payments would continue until $90,000 had been paid.
Although defendant was unrepresented she did appear at the dissolution hearing on July 11, 1990 before the Honorable Michael P. Conway.
At the hearing Attorney Quinn questioned plaintiff on the witness stand, within the hearing of defendant, about the separation agreement which was incorporated into the CT Page 2084 judgment. The following questions were asked and answered:
Q And have you and your wife entered into a separation agreement with respect to the division of your property and alimony?
A Yes, we have.
Q And have you agreed that you are to pay your wife the sum of $1,500 per month as periodic alimony?
A Yes I am.
Q And that will continue for a period of five years or the earlier death of either of you?
A Yes.
Q And you've agreed that the alimony, that's payable under the terms of your agreement, will be non-modifiable as to the length of time that it is paid?
A Yes, I do.
The following colloquy took place between the court and the defendant:
THE COURT: All right. The record may indicate that the defendant is present in the court. And far as the alimony, you understand what's going on?
MS WALSH: Yes, I do.
THE COURT: That you will declare it as income and he will be able to deduct it on his taxes?
MS WALSH: Yes, I do.
After the hearing a decree of dissolution was entered and the agreement containing the above quoted provisions was incorporated into the judgment.
On June 21, 1991 defendant brought a contempt citation against plaintiff for failure to comply with the terms of the judgement.
On August 21, 1991, claiming a decrease in income, plaintiff moved that amount of alimony be reduced.
This motion to open the judgment followed on CT Page 2085 September 5, 1991.
It is a well established general rule that even a judgment rendered by the court upon consent of the parties, which is in the nature of a contract to which the court has given its approval, can subsequently be opened without the consent of the parties if it is shown that the stipulation, and hence the judgment, was obtained by fraud, in the actual absence of consent, or by mutual mistake. Kenworthy v. Kenworthy, 180 Conn. 129, 131 (1980). A judgment based upon a stipulation may be voided if it was procurred by fraud, duress or mistake Sparaco v. Tenney, 175 Conn. 436, 438 (1978). The power of the court to vacate a judgment for fraud is regarded as inherent and independent of statutory provision authorizing the opening of judgment; hence judgments obtained by fraud may be attacked at any time. Kenworthy, id Hill v. Hill, 25 Conn. App. 552
(1991).
The question presented by a charge of fraud is whether a judgment that is fair on its face should be examined in its underpinning concerning the very matters it purports to resolve. Varley v. Varley, 180 Conn. 1, 4 (1980). In Varley the court stated that on a claim of fraud relief will be granted only if the movant is not barred by any of the following restrictions: "(1) There must have been no laches or unreasonable delay by the injured party after the fraud was discovered. (2) There must have been diligence in the original action, that is diligence in trying to discover and expose the fraud. (3) There must be clear proof of the perjury or fraud. (4) There must be a substantial likelihood that the result of the new trial will be different. James, Civil Procedure (1965) Section 11.7, pp. 540-42; 36 Ill. L. Rev 894, 896-97 (1942). Furthermore, the granting of such relief must not unfairly jeopardize interest of reliance that have taken shape on the basis of the judgement" id.
The second requirement set forth in Varley involving due diligence has been abandoned as a condition of opening a judgment concerning the financial aspects of a dissolution action on the basis of fraud. Billington v. Billington,220 Conn. 212, 217 (1991).
The principal issue here is one of fact, whether plaintiff committed a fraud on defendant as claimed.
The elements of fraud are "(1) that a false representation was made or a statement of fact; (2) that it was untrue and known to be untrue by the party making it; (3) that it was made to induce the other party to act on it; and (4) that the latter did so act on it to his injury." Maturo v. CT Page 2086 Gerard, 196 Conn. 584, 587 (1985).
Here it cannot be found that there is clear proof of fraud. It has not been proven that in his representation plaintiff made a false statement to defendant knowing that it was untrue. It may well be that defendant calculated the total amount of the anticipated payments and assumed she would receive $90,000 from the date of judgment. It cannot be found however, that plaintiff represented this to be a fact.
The conclusion that fraud has not been proven is reinforced by the plain language of the agreement, the fact that alimony payments of $1,500 per month commenced well before the date of judgment and what occurred in court.
Defendant also claims that at the time of the dissolution she was suffering from severe emotional stress due to the violence perpetrated upon her by plaintiff. Although her mental condition ties into her claim of fraud it has also been advanced as a claim that the agreement incorporated into the judgment was produced by duress.
The evidence confirms defendants' claim that during the marriage plaintiff acted with violence toward her and that she had been subjected to threats of bodily harm. It cannot be found however, that the stipulation resulted from duress or that defendant failed to retain an attorney because of pressure exerted by plaintiff.
At the time of the breakup just prior to the start of the action defendant appeared to be willing to maintain the status quo. It was plaintiff who moved out and started the action. After the parties separated defendant willingly entered into private negotiations with plaintiff. She appeared at the dissolution hearing and responded to questions by the judge without comment. Within a year, when plaintiff failed to honor the terms of the judgment, she caused him to be cited for contempt. Defendant has never been involved in any counseling or treatment.
At the time the separation agreement was entered into and at the time of the hearing it must be assumed that defendant certainly was under pressure and suffered emotional distress. This would be normal for any spouse in a similar situation. The better evidence however, does not permit a conclusion that the separation agreement and the judgment incorporating it were the result of duress.
Accordingly, the motion to open the judgment is denied. CT Page 2087
PURTILL, JUDGE